IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

DAVID MEARS                                                                                                  PLAINTIFF

V.                                      CASE NO. 2:24-CV-2043

TYSON POULTRY, INC. and
TYSON FOODS, INC.                                                                                      DEFENDANTS

MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Tyson Poultry, Inc. and Tyson Foods, Inc.'s (collectively, "Tyson") Motion for Summary Judgment (Doc. 24).[1] For the reasons explained below, the Motion is **GRANTED**.

I. BACKGROUND

According to Plaintiff David Mears's deposition testimony in this case, he has worked for Tyson, on and off, since 1990 as a poultry specialist. He served as Live Production Manager at Tyson's facility in Robards, Kentucky, from 2007 through 2010. Then, in 2011, he transferred to Tyson's facility in Clarksville, Arkansas, to serve as Live Production Manager. He moved back to the Robards facility in 2014 to serve as Complex Manager for the next three or four years. Around 2014, Mr. Mears and his wife became the owners of a chicken farm located in Arkansas. Their farm sold poultry to Tyson in 2015, 2016, and 2017, while Mr. Mears was Complex Manager at the Robards facility.

---

[1] In ruling on the Motion, the Court also considered Tyson's Statement of Undisputed Facts (Doc. 25) and Brief in Support (Doc. 26); Plaintiff's Response (Doc. 31), Brief in Support (Doc. 32), and Response to Statement of Facts (Doc. 33); Tyson's Reply (Doc. 36) and Response to Plaintiff's Statement of Facts (Doc. 37); and all evidence attached to the briefing.

1

Mr. Mears voluntarily resigned from his job at Tyson in 2017 and began working for another poultry supply company called OK Foods as Director of Breeders. He left OK Foods in 2019 to work for another company in South Carolina, then switched jobs again to work for a different company in Pennsylvania. It was not until April 2021 that he returned to Arkansas to accept a job with Tyson in Waldron, Arkansas, as Production Manager. He was fifty-seven years old when Tyson rehired him.

After several months working at Tyson's Waldron facility, Mr. Mears was transferred to Tyson's plant in Clarksville, Arkansas, where he became Live Operations Manager. His family farm also began supplying poultry to Tyson again in 2022.

Tyson has a Conflict of Interest ("COI") Policy that prohibits its employees from engaging in certain conduct and requires them to disclose other conduct in writing. The Policy required Mr. Mears, as a Tyson employee, to disclose whether he had "an interest" in any "producers or poultry breeders or growers" and whether he "[p]articipat[ed] in any paid or unpaid activities that may overlap with Tyson responsibilities involving the Company, the Company's customers, vendors, industry or competitors." (Doc. 24-8, ¶ 4.1). He was also required to disclose any "new actual or potential conflict of interest within 30 days of such conflict arising using the Conflict of Interest Disclosure Form." *Id.* at ¶ 7.2; *see also id.* at § 15.2.6 (COI Disclosure Form, hyperlinked). Finally, he—and every other manager—was separately obligated to "affirm whether they have a potential or actual conflict of interest by submitting a [COI] Disclosure Form" during the fourth quarter of each fiscal year. *Id.* at ¶ 7.3.

During the years that Mr. Mears was both employed by Tyson and selling his farm's chickens to Tyson—2015, 2016, 2017, and 2022—he filled out annual COI Disclosure

2

Forms in compliance with the COI Policy at Paragraph 7.3. *See* Doc. 24-7. However, on July 23, 2023, while Mr. Mears was still working at Tyson's Clarksville plant, he and his wife signed a contract to sell their farm's poultry to OK Foods, Mr. Mears's former employer and Tyson's competitor in the poultry-supply business. Mr. Mears told several people at his plant about his contract with OK Foods, including the breeder manager, hatcher manager, live haul manager, and Mr. Mears's immediate supervisor, Josh Nelson.

News of Mr. Mears's side business with OK Foods traveled fast. Eventually, Tyson's Senior Vice President, Shelby Watkins, heard about it and discussed it with Tyson executives in HR. The thirty-day deadline for Mr. Mears to submit a COI Disclosure Form regarding the new conflict expired on August 22, 2023. In September, Tyson tasked Director of Ethics, Dak Kees, with conducting an investigation into the matter. It took a single day. First, Mr. Kees made contact with Mr. Mears by email and telephone on September 15, 2023, and confirmed that Mr. Mears failed to submit a COI Disclosure Form about the new OK Foods conflict by the thirty-day deadline. Second, Mr. Mears agreed that he knew how to submit the form and had done so in previous years. As a result, Mr. Kees concluded that Mr. Mears violated Paragraph 4.1 of Tyson's COI Policy and reported that fact to HR. That same day, Matt Bumgarner, the Senior Strategic HR Partner for Poultry Operations at Tyson, directed his subordinate in HR, Paula Mitchell, to call Mr. Mears and fire him, and she did so.

In March 2024, Mr. Mears filed suit against Tyson for violating the Age Discrimination in Employment Act ("ADEA"). Mr. Mears was fifty-eight years old at the time he was fired, and he was replaced by a forty-six-year-old man named Terry Chavers, whom Mr. Mears agrees was qualified for the job. Mr. Mears also does not dispute that

Tyson considered both a twenty-nine-year-old and a fifty-five-year-old to replace him before settling on forty-six-year-old Chavers.

In response to Tyson's Motion for Summary Judgment, Mr. Mears argues that he did not deserve to be fired because he had never before been disciplined at work and was doing a fine job. Though he admits that he knew about Tyson's COI Policy, he believes its requirements are subject to reasonable interpretation and contends that he adequately complied with the Policy by submitting yearly COI Disclosure Forms describing his farm's poultry-raising arrangement with Tyson. In his mind, the fact that he entered into a new contract with a business other than Tyson did not warrant filling out a new form. Further, Mr. Mears points out that even though he failed to comply with what he considers to be a hyper-technical reading of the COI Policy, he gave at least constructive notice to Tyson about his side business with OK Foods by telling his supervisor (and others) at the plant about it. Finally, Mr. Mears notes that his replacement, Mr. Chavers, was also engaged in a side business selling chickens to OK Foods as of the date Tyson hired him, September 11, 2023, and still sells chickens to OK Foods to this day. At the same time, Mr. Mears concedes that Mr. Chavers submitted a COI Disclosure Form describing the conflict with OK Foods within thirty days of his hire date. *See* Doc. 30-1.

## II.  LEGAL STANDARD

A party moving for summary judgment must establish both the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law.  *See* Fed. R. Civ. P. 56. The Court must review the facts in the light most favorable to the nonmoving party and give that party the benefit of any inferences that can be drawn from those facts.

*Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212–13 (8th Cir. 1997). If the moving party meets its burden, "the nonmoving party must then come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.*

"To be material, a fact must 'affect the outcome of the suit under the governing law.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1052 (8th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient' to survive summary judgment." *Anderson v. Durham D&M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010) (quoting *Liberty Lobby*, 477 U.S. at 252). The nonmoving party must instead produce sufficient evidence "such that a reasonable jury could return a verdict" in their favor. *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Liberty Lobby*, 477 U.S. at 248 (1986)).

"An age discrimination plaintiff may survive the defendant's motion for summary judgment either by setting out direct evidence of discrimination or by creating an inference of discrimination under the *McDonnell Douglas* burden-shifting framework." *Ramlet v. E.F. Johnson Co.*, 507 F.3d 1149, 1152 (8th Cir. 2007) (citation omitted). Here, Mr. Mears has no direct evidence of discrimination, which means he must meet his initial burden of proof by establishing a prima facie case. He does this by showing that: (1) he is over forty years old; (2) he met the applicable job qualifications; (3) he suffered an adverse employment

action; and (4) he was replaced by someone sufficiently younger to permit an inference of age discrimination. *Ramlet v. E.F. Johnson Co.*, 507 F.3d 1149, 1153 (8th Cir. 2007).

Next, the burden shifts to Tyson to articulate a legitimate, nondiscriminatory reason for firing Mr. Mears. *See Starkey v. Amber Enters.*, 987 F.3d 758, 763–64 (8th Cir. 2021). Once that burden is cleared, Mr. Mears must point to facts to show that Tyson's reason "was mere pretext for discrimination" and that "age was the 'but-for' cause of the challenged adverse employment action." *Id.* (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 856 (8th Cir. 2012)). The ADEA's but-for standard "is a heightened standard for pretext," meaning that it is more stringent to meet than the mixed-motive analysis used in Title VII claims. *Heisler v. Nationwide Mut. Ins. Co.*, 931 F.3d 786, 798 (8th Cir. 2019).

### III. DISCUSSION

Beginning with Mr. Mears's prima facie case of age discrimination, he easily meets the first three prongs of the test, as he was over the age of forty when he was terminated, he was qualified for the job, and his firing constituted an adverse employment action. But as for the fourth prong—proof that he was replaced by someone sufficiently younger to permit an inference of age discrimination—the Court is not as convinced.

The difference in age between Mr. Mears and his replacement, Mr. Chavers, does not reasonably permit an inference of age discrimination in light of the fact that: (1) there is no evidence in the record of age-based discriminatory animus by Tyson; (2) Mr. Mears and his replacement were both well over the age of forty when Mr. Mears was fired; and (3) *Tyson hired Mr. Mears when he was fifty-seven years old*. According to the Supreme Court, the age difference between a plaintiff and his replacement could be "an utterly irrelevant factor" if there is no other evidence of age discrimination. *See O'Connor v.*

6

*Consolidated Coin Caterers Corp.*, 517 U.S. 308, 312 (1996). The facts tend to show that Tyson was not the sort of employer that discriminates based on age—regardless of the twelve-year age difference between Mr. Mears and his replacement. *See Hennessey v. Good Earth Tools, Inc.*, 126 F.3d 1107, 1108–09 (8th Cir. 1997) ("[Employer] hired [employee] when he was fifty-five years old and fired him when he was fifty-nine. . . . [Employer]'s hiring of [employee] at age fifty-five, when he was well within the age group protected by the ADEA, suggests that [employer] was not influenced by ageism in firing him four years later."); *Lowe v. J.B. Hunt Transp., Inc.*, 963 F.2d 173, 175 (8th Cir. 1992) ("It is simply incredible, in light of the weakness of plaintiff's evidence otherwise, that the company officials who hired him at age fifty-one had suddenly developed an aversion to older people less than two years later.").

Assuming for the sake of argument that Mr. Mears has satisfied his prima facie burden, the Court next examines Tyson's legitimate, non-discriminatory reason for firing Mr. Mears and Mr. Mears's evidence of pretext. Here, the case falls apart. Mr. Mears was fired for not submitting a COI Disclosure Form by the thirty-day deadline. His obligations under the COI Policy were clear: He was required to "disclose any new actual or potential conflict of interest within 30 days," which would include agreeing to sell poultry to a new vendor after previously selling only to Tyson. (Doc. 24-8, ¶ 7.2). The COI Policy does not contemplate oral or constructive notice of a new conflict in lieu of filling out the COI Disclosure Form. *See id.* And, finally, it is immaterial that Mr. Mears's replacement was permitted to remain at Tyson even though he also sold poultry to OK Foods. Unlike Mr. Mears, Mr. Chavers complied with Tyson's COI Policy, and it was up to Tyson to decide whether Mr. Chavers's conflict was excused or unexcused. The Court cannot concern

itself with "whether [Tyson] made a good decision, or even a fair one" but must instead focus on "whether [Tyson] took an adverse employment action based on a discriminatory animus." *Schaffhauser v. United Parcel Service*, 794 F.3d 899, 903 (8th Cir. 2015); *see also Guimaraes v. SuperValu, Inc.,* 674 F.3d 962, 977 (8th Cir. 2012) ("Federal courts do not sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers.").

Since there is no genuine, material dispute that Tyson's termination decision was based on its good-faith belief that Mr. Mears violated the COI Policy—as confirmed by Mr. Kees's investigation—this case must be dismissed.

## IV. CONCLUSION

**IT IS ORDERED** that Defendants Tyson Poultry, Inc. and Tyson Foods, Inc.'s Motion for Summary Judgment (Doc. 24) is **GRANTED**, and the case is **DISMISSED WITH PREJUDICE**. Judgment will enter contemporaneously with this Order.

**IT IS SO ORDERED** on this 18th day of June, 2025.

*/s/ Timothy L. Brooks*
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE